CASE 98.—PROSECUTION   AGAINST   THE   LOUISVILLE &
     NASHVILLE RAILROAD COMPANY.—April 20, 1910.

# L. & N. R. R. Co. v. Commonwealth

Appeal from Barren Circuit Court.

SAMUEL E. JONES, Circuit Judge.

Defendant convicted and appeals.—Reversed.

1. Railroads—Operation—Accommodations   for   Passengers—
   Water-Closets at Stations.—Ky. St. section 772, requiring
   railroad companies to provide convenient water-closets or
   privies, and maintain them in decent order at their stations,
   is to be reasonably construed, and, before a company could
   be held liable for failure to do so, it must be shown that it
   suffered a privy to remain in an indecent or unclean condi-
   tion; and it is not enough to show that on one or two
   occasions it was found out of order or unclean.

2. Railroads—Operation—Accommodations   for   Passengers—
   Water-Closets at Stations—"Convenient."—If a railroad com-
   pany builds and maintains a closet suitable for the wants
   of the traveling public, as convenient to a depot as the cir-
   cumstances permit, and keeps it in decent order and repair,
   it has substantially complied with the requirements of such
   section; the word "convenient" being defined as "handy"
   and as "easy of access."

3. Railroads—Operation—Accommodations   for   Passengers—
   Water-Closets at Stations.—In complying with such section,
   if the location of public buildings and dwellings near a depot
   is such that a privy cannot be maintained nearer than where
   it is located, without being objectionable and offensive,
   not injurious to the health of citizens living there, the com-
   pany would not be required to maintain it nearer to the
   depot.

4. Criminal Law—Statutory Offenses.—No one   should be   re-
   quired to violate one provision of the law to conform to the
   requirements of another.

5.  Railroads — Operation — Accommodations for Passengers — Water-Closets at Stations. — In determining whether a railroad company has complied with Ky. St. section 772, in providing a convenient water-closet at a station, not only its distance from the depot, but the means of approach thereto, must be considered.

6.  Railroads—Operation—Accommodations for Passengers—Water-Closets at Stations.—It was not contemplated by such section that companies should be put to the expense of establishing and maintaining a waterworks system at a depot to maintain a privy immediately adjacent thereto to accommodate the traveling public.

7.  Railroads—Operation—Accommodations for Passengers—Water-Closets at Stations.—Such section was not made or intended to apply to the wants of persons who use a passenger depot as a lodging-house, for section 784, Ky. St., only requires passenger depots to be kept open for the reception of passengers a limited time prior to the arrival and departure of regularly scheduled trains.

8   Railroads—Operation—Accommodations for Passengers—Water-Closets at Stations.—Nor does such section require a company to meet a condition when travel on particular days is abnormal or congested, but only that its accommodations shall be such as will meet the requirements of its ordinary and usual travel.

9.  Railroads—Operation—Accommodations for Passengers—Water-Closets at Stations.—Evidence held insufficient to go to the jury on the question whether a railroad company failed to provide a closet and maintain it at a station as required by such section.

SIMS & RHODES, BENJAMIN D. WARFIELD and CHARLES H. MOORMAN for appellant.

D. A. McCANDLESS, JAMES BREATHITT and TOM B. McGREGOR for commonwealth.

OPINION OF THE COURT BY JUDGE LASSING —Reversing.

The Louisville & Nashville Railroad Company was indicted, under section 772 of the Kentucky Statutes, for failing to provide a convenient and suitable water-closet or privy, and keep and maintain same

in decent order and repair at its station at Glasgow Junction. Under a plea of not guilty the company was tried by a jury, found guilty as charged, and its punishment fixed at a fine of $250. Judgment was entered upon this verdict and the company appeals.

Several grounds are relied upon for reversing, but the only one which we find it necessary to consider is: Did the court err in refusing to peremptorily instruct the jury to find for the defendant? Glasgow Junction is a small town of the sixth class, lying in Barren county, Ky., on appellant's railway, and is the eastern terminus of the Mammoth Cave Railway and the Western terminus of the Glasgow Railway. A great number of people get on and off at Glasgow Junction in going to and returning from Mammoth Cave. The water-closet, or privy, is located about 200 yards from the depot, and behind the freight depot from the passenger depot. It is shown that at one time, some three or four years prior to the institution of this prosecution, the company had built a privy on its right of way, about half way between the passenger depot and the freight depot, but that such a protest was raised because thereof by one of the hotel keepers, in front of whose property it was placed, that the company moved it to its present location. It is a frame building, with two rooms and two doors, and each room is provided with suitable accommodations for two persons. One of these doors is kept locked all of the time; the key being in charge of the agent at the passenger depot. The other was likewise kept locked until the door was broken open, and for some months prior to the institution of this prosecution this door was left unlocked. It is shown by the evidence of practically all of the witnesses for both the commonwealth and

the defendant that the privy could not be located at any other point than that at which it is located without being offensive and objectionable to persons living adjoining the right of way near the passenger depot. The evidence further shows that, when examined or inspected by the witnesses, the water-closet that was kept locked was always clean and in good condition. The one that remained open or unlocked is shown, upon one occasion prior to the institution of the prosecution, to have been unclean, and another witness testifies that on one occasion after the institution of the suit it was in like condition.

The point is made that as one compartment of the privy was found to be unclean, as above stated, the company had violated that provision of the statute which required it to keep and maintain the privy in decent order. The statute is entitled to a fair and reasonable construction, and the company is only required to exercise reasonable care to keep its privy in decent order, and, before the company could be held liable or answerable for a failure to keep it in decent order, it would be incumbent upon the commonwealth to show that it suffered or permitted its privy to remain in an indecent or unclean condition. It is not enough to show that upon one particular occasion, or even upon two particular occasions, it was found to be out of order or unclean.

Upon the above showing, it is insisted for the company that the court should have peremptorily instructed the jury to find for it. There is no sewerage system at Glasgow Junction; and while a large number of passengers are received and discharged annually from the trains that stop there, and some inconvenience has undoubtedly at times been ex-

perienced by passengers because of inadequate
facilities in this particular, if the company has, as a
matter of fact, built and does maintain a water-
closet suitable for the wants of the traveling public
as convenient to its depot as the circumstances will
permit, and maintains it in decent order and keeps
it in repair, it has substantially complied with the
requirements of the statute. Appellee practically
concedes that the water-closet in question is located
at as convenient a place as it may well be under the
circumstances but, it is urged, as there is an abundant
flow of water under the ground along appellant's
railway at that point, the appellant could construct
a sewerage system of its own so as to enable it to
maintain a water-closet nearer its depot without
giving offense to the citizens living in that locality
or without endangering the public health, or, if this
cannot be done, that by digging what is known as a
dry well the closet could be maintained nearer the
depot without endangering the health of the com-
munity.

The burden of appellee's complaint is that the
privy is located too far from the depot. A similar
question was presented in the case of Louisville &
Nashville R. R. Co. v. Commonwealth, 114 S. W.
1192, in which the court said: "If there was no
point where the closet could be placed to be more
suitable or convenient, the defendant has not violated
the statute. The law only requires that the closet
shall be reasonably convenient, considering the exist-
ing conditions, and all the proof as to conditions
existing, including the proof as to a better location
for the closet, should be admitted. In towns without
a water supply, a very different condition is pre-
sented from that presented in a city where the water-

closet may be in the station next to the waiting room. The defendant must necessarily exercise judgment as to what is the best place for the closet in such cases, and no criminal liability should be imposed where' the defendant has exercised such care and judgment as may be reasonably expected of a person of ordinary prudence in locating the closet.'' Webster defines the word ''convenient'' to be ''handy,'' ''easy of access,'' and, as used in the statute under consideration, it is necessarily a relative term, and means that the water-closet or privy shall be maintained as near the depot and of as easy access to the traveling public getting on and off the trains at that station as the circumstances of the case will admit. Hence it is clear that what would be convenient in one case might not be at all convenient in another; each case being governed by the circumstances and surroundings peculiar to it. If the location of the public buildings and dwellings and hotels near the depot at Glasgow Junction is such that a privy cannot be maintained nearer the depot than it is now located without being objectionable and offensive, if not injurious to the health of the citizens living there, then appellant would certainly not be required to maintain it nearer to this depot than it is now located. No one should be required to violate one provision of the law in order to conform to the requirements of another. The rights of the local citizens must be considered and consulted as well as those of the traveling public, and, if it would be injurious to the property rights and health of the citizens living near the depot to establish a public privy nearer to the depot than the one in question then, as a matter of law, appellant is maintaining a convenient privy within the meaning of the

law. In determining the question as to whether or not appellant has conformed to the requirements of the law, not only the distance at which the privy is maintained from the depot must be considered, but likewise the means of approach thereto. In the case just cited the closet was located some 60 or 80 yards from the depot, whereas, in the present case, it is located about 200 yards from the depot. In that case there was no way of reaching it except along a dirt walk, whereas, in the case under consideration, there are three ways of reaching the closet. By going down the pike to the far side of the warehouse it could be easily reached, or by going along the side of the railroad or down the track it could be reached without inconvenience by any one desiring to use it; and, inasmuch as it is shown that the point at which it is located is as near to the passenger depot as it can be located without becoming offensive or objectionable to the residents in that locality, we are of opinion that the rule announced in the case from which we have just quoted is applicable.

There are located in the immediate vicinity of the passenger depot two hotels, and these hotels are unwilling that a privy, even though surrounded by lattice work, should be located immediately in front of their property. Other residents in that locality enter the same objection, and, unless it is to be held that the railroad company is to be required to adopt one of the two methods suggested by the commonwealth—i. e., by digging a dry well or by installing a waterworks plant and sewerage system of its own —the company is unable to maintain a water-closet nearer to its passenger depot than the present one is located. As there is a stream of running water under the ground along the right of way, it is very

doubtful if the health authorities would or should permit the dry well plan to be adopted, for the reason that impure matter would necessarily percolate through the walls of the well and into the running water and might pollute and render unfit for use the supply of water used by the inhabitants of the town. And we do not believe that the Legislature in enacting this statute contemplated that railroad companies should be put to the expense of establishing and maintaining a waterworks system at its depots in order to maintain a privy for the accommodation of the traveling public immediately adjacent to its passenger depot. As is suggested by counsel for appellant in brief, most, if not all, passenger trains in this day are provided with suitable and convenient toilet rooms. The hotels at which many of the passengers stop are likewise provided with suitable accommodations; and it is in proof that, if any one wanted to use the privy in question, all that a passenger had to do was to ask the station agent in charge both night and day at the depot for the key. It is shown that frequently passenger trains came into the depot late at night, and that the passengers had to remain over until the next day to get a train out of town, and that many of these frequently remained in the passenger depot over night, and that at times the passenger depot and grounds immediately around it were left in a foul and filthy condition by immigrants and others. We do not believe that this statute was made or intended to apply to the wants of persons who use the passenger depot as a lodging house, for section 784 of the statute only requires of railroad companies that they shall keep their passenger depots open for the reception of passengers a limited time prior to the arrival and

departure of its regularly scheduled trains. It was not contemplated that in a town of the size of Glasgow Junction passengers who arrived in the middle of the night would remain in the depot until the next day, and that the company must maintain suitable and convenient accommodations for such during their five or six hours' stay at the depot. Nor is the company required to meet a condition which is presented by the record, where the travel upon particular days is abnormal or congested, but only that its accommodations shall be such as will meet the requirements of its ordinary and usual travel.

We are of opinion that the privy in question is amply sufficient to meet the requirements of the statute in this particular, and, as it is shown that it could not be located at a point nearer to the passenger depot than it is, the trial judge should have instructed the jury to find for the defendant at the conclusion of all of the testimony. For his failure so to do, the judgment is reversed.