## Louisville & Interurban Railroad Company v. Commonwealth.

(Decided June 4, 1918.)

### Appeal from Oldham Circuit Court.

1. Railroads—Location of Privy—Question for Jury.—A privy, with separate compartments for the sexes and conceded to be suitable, placed in the rear and within fifty or sixty feet of a depot, held so located as to provide patrons of the railroad toilet facilities in accord with the best in common use in the vicinity in which the depot is located, and to satisfy the requirements of sec. 772, Ky. Stats.; and it was error to submit to the jury the question of its suitable and convenient location.

2. Railroads — Maintenance of Privies — Locking Privy. — Railroads may keep the privies, they are required to maintain, locked to insure cleanliness, but the keys thereto must be accessible to patrons at all such times as they have the right to be at the station.

3. Railroads—Locking of Privies—Question for Jury.—In a prosecution of a railroad for failing to provide a suitable and convenient privy, evidence as to when the privy was locked and of the accessibility to patrons of the keys thereto held insufficient to take the question to the jury.

WILLIS, TOD & BOND for appellant.

CHARLES H. MORRIS, Attorney General, and OVERTON S. HOGAN, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Reversing.

The appellant was indicted, charged with failing to provide a suitable and convenient privy at its depot in the city of LaGrange in violation of section 772, Kentucky Statutes, and the trial resulting in a judgment of conviction imposing a fine of $100.00, it has appealed upon the ground that there was not sufficient evidence to authorize a submission to the jury, rendering erroneous the court's denial of its motion for a directed verdict.

LaGrange is a city of the fifth class, the county seat of Oldham county, and has a population of thirteen or fourteen hundred, but is without a public waterworks or sewerage system, and defendant had erected and maintained, within fifty or sixty feet and in the rear of its passenger station, a privy with separate compartments for the sexes. There is no complaint that the building was not suitable, or that it was not kept clean and in good condition, and it is conceded it was as conveniently located as was practicable under existing conditions, if located outside the passenger station. So, the principal question involved here is whether or not there was any evidence that it was reasonably practicable and necessary, under existing conditions, to have located it within the station, because, in construing this statute, it was held by this court in L. & N. R. Co. v. Commonwealth, 137 Ky. 802, that the word "convenient" means, as near the depot and of as easy access as the circumstances of the case will admit, and that each case shall be governed by the circumstances and surroundings peculiar to it.

The defendant claims that, under the rule laid down in L. & N. R. Co. v. Commonwealth, 131 Ky. 268, there was no evidence of criminal liability, and cites the following from that opinion:

"There was no complaint that the building was not suitable, or that it was not kept clean and in good condition. The only complaint was its location. The evidence offered should have been admitted, for, if there was no point where the closet could be placed to be more suitable or convenient, the defendant has not violated the statute. The law only requires that the closet shall be reasonably convenient, considering the existing conditions, and all the proof as to conditions existing, including the proof as to a better location for the closet, should be admitted. In towns without a water supply, a very different condition is presented from that presented in a city where the water closet may be in the station next to the waiting room. The defendant must necessarily exercise judgment as to what is the best place for the closet in such cases and no criminal liability should be imposed where the defendant has exercised such care and judgment as may be reasonably expected of a person of ordinary prudence in locating the closet. The court on another trial will so instruct the jury."

The Commonwealth insists, however, that in that case we were dealing with a much smaller town and, under the opinions in the more recent cases, L. & N. R. Co. v. Commonwealth, 175 Ky. 282, and L. & N. R. Co. v. Commonwealth 179 Ky., 279, a different rule has been established with reference to towns of the size and importance of LaGrange.

In the latter case, while the question involved was the same as here the facts were quite different, since in Taylorsville, the city under consideration, there was a public waterworks system, and the defendant had located the closet for women inside the depot, with some satisfactory and practical arrangement for sewage disposal, and in several homes and business houses in the vicinity inside toilet facilities were provided, and this evidence was held to be some evidence of the practicability of and necessity for the location in the station of the men's privy, located outside of and at a considerable distance from the depot, which required a submission to the jury of the question of fact whether or not the location selected by the defendant was convenient under the circumstances. In the former of the two cases referred to above, the question involved was whether or not, at Horse Cave, a town having two public service water companies and a natural drainage available for sewage disposal, the defendant in locating the privy outside the station had complied with the reasonably convenient and suitable location required by the statute, and, in holding the evidence sufficient to warrant a submission of the question to the jury, we said:

"What constitutes a reasonably convenient and suitable water closet or privy, depends upon the facts and circumstances surrounding each case. In small, sparsely populated communities, the old back or garden house, if kept clean and decent, may fulfill the requirement of the statute, but in a live, active and progressive town like Horse Cave, where a large population is served, the facilities should accord with the best in common use, in homes and business houses, in the immediate vicinity of the depot. Nothing less than this will satisfy the statute. It is argued that this will necessitate considerable expenditure of money. It will cost something. So also does it cost money to erect an old fashioned privy, and while the modern closet may be somewhat more expensive it must be remembered that great prog-

ress has been made in recent years along similar lines, and the public sense has been quickened upon questions of sanitation and public health, things but slightly considered in former years.''

It is unquestionably true that what is reasonably suitable and convenient for one town may not be so for another, whether of the same size or not, for, under all the cases, the question is determined by the facts of each case, and we are unable to discover any conflict in these opinions in the principles announced, because the care and judgment that may reasonably be expected of a person in locating the closet as required in the case reported in 131 Ky. 268, is that he will so locate it as to provide toilet facilities in accord with the best in common use in the vicinity, as required in the two later cases, regardless of the size of the town.

Let us, therefore, examine the evidence here to see if there was any evidence that in the location of the closet outside rather than inside the depot, for that is the only dereliction complained of, the defendant failed to exercise such care and judgment as may be reasonably expected of a person of ordinary prudence, who is required to furnish facilities in accord with the best in common use in the vicinity, and the proper limits of the ''vicinity'' here is the entire town rather than the immediate vicinity of the depot, evidently adopted in the Horse Cave case because of peculiar sewerage facilities in the immediate vicinity of the depot.

It is shown that the defendant's privy is of the same character and as conveniently located as any in the town, except the one at the Louisville & Nashville Railroad depot, which is inside the station and operated by water from the company's tank, in which it pumps and stores water from a private pond by means of a private pumping plant, primarily for furnishing water to its engines; another at the court house, operated by a hand pump, chemicals and a septic tank, and about the success of which there is a conflict in the evidence; and still another at the public school building, operated by a private water works system, where the water is pumped into a tank by a gasoline engine, and the sewage discharged into a cesspool. These are the only places in the town where according to the proof inside toilets are maintained, and these under such conditions as to furnish proof of the possibility rather than the practica-

bility of defendant locating the privy within the depot; and these few exceptions to the facilities in common use in the community furnish no proof whatever that the defendant failed "to exercise such care and judgment as may be reasonably expected of a person of ordinary prudence in locating the closet" under existing conditions, because required only to furnish "facilities in accord with the best in common use" in the community, and without such proof, as we have seen, there was no criminal liability.

2. Counsel for the plaintiff insists, however, that even if there was no evidence that the privy was inconveniently located and, although it was proven that the building was suitable and cleanly kept there was nevertheless a question for the jury as to whether the defendant maintained a convenient and suitable privy as required by the statute, because of the following evidence of Dr. Connell:

"Q. How late at night did the Louisville & Interurban run its cars before February, 1916? A. I think, to the best of my knowledge, approximately one o'clock in the morning was the last car. Q. What time at night did the agent leave the station? A. I never did find him there after six o'clock. Q. Was or not the closet kept locked? A. So far as I know, after the agent left, it was. Q. After the agent left how could any one get the key to get into the closet? A. I couldn't say."

A railroad company, to comply with this statute, unquestionably must not only provide a suitable and convenient privy but also have it accessible to its patrons during the hours when it is required to keep its station open for the accommodation of persons arriving at and departing from its station, because to erect the building, lock the doors, and then fail to provide a means for its patrons to obtain the key during such times as they may be entitled thereto, would deny to them the very facilities and accommodations the statute was enacted to insure. A privy had just as well not have been built, unless it may be used by patrons at such times as they have a right to be at the station; and the statute is violated whenever, even though a suitable privy has been erected at a convenient place, it is not kept open or accessible by application to an agent in charge of the station for the key. We have held the privies may be kept locked to insure their cleanliness, if the keys are to be had

upon application to the agent, L. & N. R. R. Co. v. Commonwealth, 20 Ky. L. R. 100, but this, of course, contemplates the presence of an agent to whom application can be made at all such times as patrons have the right to be at the station and to use the privies.

We do not think, however, the evidence of Dr. Connell, which is all of the proof here upon the question, was sufficient to present such an issue for the jury, as does not seem to have been attempted upon the trial, since his evidence is not positive as to when the agent left the station, the arrival and departure of trains thereafter, or whether the doors were kept locked at such times, if any.

Wherefore, the judgment is reversed and the cause remanded for a new trial consistent herewith.